**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
……………………………………….…x
PASTOR PAUL DOYLE d/b/a
"CORNERSTONE CHURCH", and  CLAY          **Civil Action No.23-cv-6056**
CLARK d/b/a "REAWAKEN AMERICA"

        Plaintiffs,

    v.

ATTORNEY GENERAL LETITIA          **COMPLAINT**
JAMES, in her individual and
official capacity.                        (***Jury Trial Demanded***)

        Defendant.
……………………………………..…..x

COMES NOW, Plaintiffs PASTOR PAUL DOYLE and CLAY CLARK, by and through undersigned counsel, and submits the following complaint against the Defendant, ATTORNEY GENERAL LETITIA JAMES.

## I. PRELIMINARY STATEMENT

This is a civil action arising inter alia, under Title II of the Civil Rights Act of 1964 (hereinafter "Title II"), 42 U.S.C. § 1983, the First Amendment of the United States Constitution, among other state and federal statutes, pursuant to the New York State Human Rights Law (hereinafter "NYSHRL") and New York City Human Rights Law (hereinafter "NYCHRL"), New York State Civil Rights Law,  for negligence, defamation per se, libel per se, and discrimination on the basis of race, color, religion, and political affiliation.

Specifically, Plaintiff alleges that the Defendants negligently, wantonly, recklessly, intentionally, and knowingly sought to and did deprive them of their constitutional and civil rights, pursuant to the above-named statutes and causes of action by committing acts to deprive Plaintiffs of rights secured by the Constitution of the United States and the State of New York.

Further, Defendant James Defendants negligently, wantonly, recklessly, intentionally, and knowingly published multiple false statements to multiple media outlets to mar the reputations of Pastor Doyle and Clay Clark, to provoke objectionable opinions in the minds of members of the community to expose Plaintiffs to hatred, contempt, and aversion.

## PARTIES AND JURISDICTION

1. PLAINTIFF PAUL DOYLE is the Senior Pastor at Cornerstone Church ("The Church"), located at; 8020 Bank Street Road, Batavia NY, 14020. Pastor Doyle resides in Batavia New York at; 8050 Bank Street Road, Batavia NY, 14020.

2. PLAINTIFF CLAY CLARK is the coordinator and organizer of the Reawaken America Tour ("The Tour"). His address is 1100 Riverwalk Terrace, Jenks, OK 74037.

3. DEFENDANT Letitia James is the Attorney General of the State of New York. Her office is located at; 28 Liberty St, New York, NY 10005

## VENUE AND JURISDICTION

4. This Court has subject matter jurisdiction over this action under 28 USC § 1331 because it arises under the Constitution and laws of the United States (including 42 USC § 1983 and Title VII of the 1967 Civil Rights Act) and because there is a substantial question of federal law involved.

5. Venue is appropriate pursuant to 28 U.S.C §1391

2

**FACTUAL ALLEGATIONS**

6. Pastor Paul Doyle is a Batavia native and the Senior Pastor at Cornerstone Church in Batavia New York.

7. Cornerstone is a small, rural church, with about 100-150 parishioners, dedicated to community service and outreach.  Cornerstone Church offers many community programs for adults and youth. They also provide food, clothing and other basic needs to impoverished areas and neighborhoods. Cornerstone Church was also aggressive in their assistance to the victims of the mass shooting in Buffalo, sending an outreach team to provide assistance, faith, and prayer to the victims who were suffering. Pastor Doyle, Cornerstone Church, and their congregants, not only have an immaculate reputation for serving God, but they also have an impressive history of serving the community and helping those in need. They have worked intentionally to breakdown walls and build relationships with communities of color, connecting with local churches in order to be discipled.

8. Mr. Clay Clark is the owner and operator of Thrive Time Show, which is a highly successful business podcast and business growth consulting firm. Mr. Clark has been named the US Small Business Association Entrepreneur of the year *twice* and has also been awarded the Blue-Ribbon National Quality Award by the US Chamber Of Commerce. At age 20 Mr. Clark won the entrepreneur of the year award from the Tulsa Metro Chamber Of Commerce and at age 27, he was named Oklahoma's Entrepreneur of the Year by the small business administration.

9. "Reawaken America" is a conservative political movement/tour that hosts events throughout the country. Speakers at these events include prominent Christians, as well as Republican and

conservative leaders from across the United States. The Cornerstone Church, run by Pastor Doyle, accepted an invitation to host the event, which was held on August 11-13, 2022.

10. On August 3rd, 2022, DEFENDANT Letitia James sent a letter to the home of PLAINTIFF Pastor Doyle addressed to him, the Cornerstone Church, Mr. Clark, and General Michael Flynn, who co-organized The Tour with PLAINTIFF Clark. A copy of this letter is attached hereto as *Exhibit A.*

11. DEFENDANT'S letter can be considered nothing less than an attempt to covertly intimidate and threaten the Plaintiffs into shutting down the event.

12. DEFENDANT James makes numerous statements that are facially incorrect, libelous, and covertly threatening towards both Plaintiffs.   Her actions are politically motivated and the concerns Ms. James relays in her letter are a cloak for her passive threats to prosecute PLAINTIFF Doyle, Clark, and others associated with the event strictly for their political views.

13. DEFENDANT James' reckless threats to prosecute the Plaintiffs along with her inferences towards racial discrimination and fraud associated with the church and the event were publicized in numerous media outlets and which have injured Pastor Doyle's reputation, that of his church, and the reputation of Mr. Clark as well.

14. As a result, Pastor Paul and Cornerstone Church now have a smear against their names which has created a suspicious taint on the relationships they have worked diligently to develop.  Yet, despite its years of sacrifice and service to the community and its youth, Ms. James decided to forego any reasonable inquiry into the church to verify her alleged concerns, as required of her as the top law enforcement officer.

4

15. Had she done so, she would have learned about the generous history of Cornerstone Church, the upstanding reputation of both Plaintiffs, and the fact that the Reawaken America Tour had not had a single publicized act of violence at any of their events, nor has the tour been legitimately accused of any crimes, illicit behavior, or the violation of any laws or ordinances. Nor has any speaker associated with the tour been accused of anything similar. Finally, both Plaintiffs are successful and law-abiding members of society who have performed countless hours of service to their respective communities.  The Attorney General was, therefore, negligent, and reckless in her actions.

16. Ms. James was not concerned with any of the foregoing. She saw the Reawaken America tour filled with her political rivals and wanted them out of the state. She then leveraged her power, authority, and official title as Attorney General of the State of New York to defame, slander, and threaten fully law-abiding citizens, a church, and its congregants who were simply and peacefully, exercising their constitutional and civil rights.  Ms. James' expressed concern that the tour may incite violence is especially ironic when considering the level of vitriol towards the Plaintiffs caused by her ethically deficient, factually incorrect, and widely publicized comments. Meanwhile, the event hosted by the Plaintiffs went off without a single issue.

17. The Reawaken America Tour was scheduled to host an event in Rochester New York at the Main St. Armory on August 12th, 2022. Almost immediately after it was booked at the Armory, a number of community members and politicians began calling for its cancellation. Among them was Monroe County Legislature President Sabrina Lamar, who issued a statement reading, in part: "At every stop along the way, this nationalist tour has left in its wake a trail of dangerous disinformation that can lead to increased bigotry, hate, and, at its most extreme, violence."

5

18. Due to the massive backlash and slanderous statements from government officials and politicians, Main St. Armory cancelled the event. As such, The Tour reached out to Pastor Doyle to see if his church would be willing to host the event. Pastor Doyle agreed, primarily due to his strong belief that free speech should not be restricted and those who attempt to exercise it should not be intimidated, particularly by government officials.

19. Plaintiffs, Pastor Doyle, and Mr. Clark reached out to law enforcement and local government officials to ensure the safety of the event and that all local rules, laws, and ordinances would be followed. Pastor Doyle even went as far as meeting with multiple groups from Rochester who were against the event to get an understanding about their concerns. After meeting with these groups, he determined that The Tour was not what was being portrayed in the media and by government officials. He attempted to address the concerns of the groups, but to no avail. It was then he was sure he made the right choice.

20. Despite these efforts, on August 3rd, 2022, Ms. James sent a threatening letter in her official capacity as Attorney General of the State of New York, to the Reawaken America organizers, including PLAINTIFFS Mr. Clark and Pastor Doyle.

21. In her letter, Ms. James claimed that she was "especially concerned about featured speakers' regular allusions to white nationalist ideals connected to the "Great Replacement Theory," a conspiracy theory that warns of white genocide and efforts to replace native born Americans with immigrants."

22. This statement was not only reckless, but DEFENDNAT James had no evidence to support this scathing remark that any speaker at any Reawaken America event ever discussed "The Great Replacement Theory" and DEFENDANT James failed to reference any.

6

23. The presupposition that the ReAwaken America Tour is associated with such a theory is nothing more than a bigoted remark founded in racist ideology and stereotypes meant to deter and detract from the true purpose and goal of the event, and the Plaintiffs' intent.

24. DEFENDANT James' lack of any diligence prior to drafting her letter is evidenced by the fact that she raised the Buffalo mass shooting as an example of her concern, inferring that the PLAINTIFFS' event may produce similar violence.

25. Again, no Reawaken America event has ever been associated with this theory or violence, and Pastor Doyle and the Cornerstone Church certainly were not and are not associated with any such things. Most importantly, Cornerstone Church was on the front lines in Buffalo assisting victims and their families immediately after the tragedy.

26. In her ignorance, DEENDANT Attorney James continues her baseless threats throughout her letter, stating that; "New York Civil Rights Law§ 79-n empowers the Office of the Attorney General to investigate acts of violence, intimidation, threats, or harassment directed at people based on a belief or perception regarding an individual's race, color, national origin, ancestry, gender, religion, religious practice, age, disability, or sexual orientation. In addition to actual damages, any person who violates this statute can be held liable for $5,000 in penalties for each violation."

27. This statement from DEFENDANT James is sheer harassment directed at people based on their race, color and a beliefs or perceptions regarding religion or religious practice and gladly associates Pastor Doyle's beliefs and those of Cornerstone Church to the causation of a local mass shooting, after which the church swiftly took action and provided invaluable assistance to the Buffalo community.

28. DEFENDANT Attorney James' hypocrisy is on further display with her threat that; "Additionally, New York Civil Rights Law § 40-c prohibits discriminating against another person in the exercise of their civil rights - including their right to peacefully protest - based on similar protected characteristics."

29. This statement is a fairly obvious projection from DEFENDANT Ms. James, of her own discrimination "against another person in the exercise of their civil rights".

30. Pastor Doyle and Mr. Clark have a civil right to assemble and speak, so do the attendees and participants at the ReAwaken America event. Ms. James leveraging her authority and New York law to intimidate the Plaintiffs' free speech, and right to assemble, without any rationale other than political hatred, was the only law that was violated here.

31. The DEFENDANT opens her letter with the statement: "As New York's top law enforcement officer, I have significant concerns that the ReAwaken America Tour's upcoming event at the Cornerstone Church in Batavia, New York on August 12 and 13 could spur extremist or racially motivated violence. These concerns center around the event's proposed dates, which coincide with the five-year anniversary of the deadly Unite the Right rally in Charlottesville, Virginia, and past extremist statements made by yourselves and the other featured speakers on the tour."

32. DEFENDANT James failed to explain how the date of the tour event in Batavia and what took place in Charlottesville, would increase the likelihood of violence. The DEFENDANT also failed to identify any "past extreme statements made by [Plaintiffs] and other featured speakers on the tour".

33. Once again, her actions are negligent, reckless and a dereliction of her duty to exercise due diligence in her representation as Attorney General and in doing so, is an abuse of power.

8

34. Moreover, it is quite obvious that Ms. James was inferring that date of the Reawaken America event was intentionally meant to coincide with the rally in Charlottesville, as if the two events had anything to do with each other.

35. In reality, there is absolutely no connection between the two events, the organizations, the coordinators, the location, or even temporal proximity as the "Unite the Right" rally took place over 5 years ago.

36. Ms. James kept her threats and accusations against the Plaintiffs intentionally broad because she had no specifics to offer. The terms "extreme statement" or "extremist or racially motivated violence", are vague, ambiguous, and lack any substance. They are also subjectively defined by DEFENDANT James in accordance with her own political bias.

37. Ironically, the extreme statements and likelihood of violence in this case were perpetuated by the **DEFENDANT** with her defamatory letter and reckless allegations.

38. As Main St. Armory experienced when they attempted to host the event, New York government officials, including the Defendant, have no problem defaming and slandering any organization that supports contrary political positions to their own.

39. DEFENDANT James' letter to the Plaintiffs also had the intent of creating community vitriol and spite towards the PLAINTIFFS, which certainly increased the likelihood of violence, but against *the Plaintiffs and their organizations*, not the citizens of New York.

40. Due to the actions of Ms. James, Plaintiffs were forced to hire additional security in order to ensure the safety of the participants and attendees who attended the event, just in case any person or group decided to act as a result of  DEFENDANT Attorney James' careless statements.

9

41. DEFENDANT James' threats continued throughout the letter until the end when she concluded by stating, "[t]he Office of the Attorney General has a duty to protect New Yorkers from extremist and racially motivated violence. We stand ready to investigate any violation of the laws above and, if necessary, to enforce them to the fullest extent available."

42. Again, there was absolutely no indication, other than the DEFENDANT'S own bias, that any violence would proceed at the event. DEFENDANT James has no basis for this threat and her intimation that the Plaintiffs would or could contribute to "racially motivated violence" by exercising their First Amendment rights is audacious, professionally negligent, and well beneath the Office of the Attorney General.

43. This letter was reported on multiple media outlets which spread throughout the community of Rochester and the State of New York resulting in numerous cancellations of ticket sales by patrons who originally planned to attend the event prior to hearing the derisive false reports. These same reports resulted in harm to the relationships forged by Pastor Paul and Cornerstone Church with the communities of color as they now question if there is a disingenuous motive at play.

44. PLAINTIFFS, Mr. Clark and Pastor Paul have been confronted by numerous people who stated their original intent to attend the event, which was allayed by the news reports and DEFENDANT James' letter.

45. As a result of the defamatory statements, PLAINTIFFS Clay Clark and Pastor Paul was forced to spend much of the day addressing the media in order to defend against the false information that was being reported in the news, as well as being vigilant to ensure the safety of the attendees.

46. This was the first time, the ReAwaken America Tour experienced anything like this during the entire time it has been in existence and operation.

### FIRST CAUSE OF ACTION VIOLATION OF 42 USC § 1983

**(Violation of Constitutional Rights)**
**First Amendment Retaliation**

47. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 46 above as though fully set forth herein.

48. 42 USC § 1983, part of the Civil Rights Act of 1871, prohibits the deprivation of any rights guaranteed under the Constitution and laws by any person acting under color of state or local law.

49. The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."   The freedom of association is a fundamental right protected by the First Amendment and is guaranteed as against state and local governments by the Fourteenth Amendment.

50. Nevertheless, as set forth above,  Defendant James, under color of state or local law,  deprived Plaintiffs of their right to association and right to free speech, as provided by the First Amendment to the United States Constitution, as the motivating factors for her contemptuous letter were the political and religious viewpoints of the Plaintiffs coupled with their race and color.

11

51. At all times relevant herein, Defendant used her position as Attorney General to threaten Plaintiffs for expressing their political and religious views and in so doing acted in an oppressive, and threatening manner to employ coercive state power in order to injure or damage Plaintiffs, thereby justifying an award of punitive damages.

52. The First Amendment prohibits government officials from encouraging the suppression of speech in a manner which 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request. [1]

53. The Plaintiffs here have a clear First Amendment Right to assemble and speak. When they attempted to exercise this right, the Defendant drafted and sent them a politically driven letter specifically designed to chill their speech. This letter was then widely publicized, damaging the reputation of the Plaintiffs and The ReAwaken America Tour.

54. This letter was an obvious attempt by Ms. James to coerce the Plaintiffs into shutting down the event using covert legal threats. Further, her letter can very "reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request." *Id.*

55. There is no question," the Supreme Court has said, "*that speech critical of the exercise of the State's power lies at the very center of the First Amendment*." [emphasis added] *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991). As a result, "a section 1983 claim will lie where the

---

[1] *Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007)

government takes negative action against an individual because of his exercise of rights guaranteed" by the First Amendment.

56. The Plaintiff in this action has an undeniable right to associate and speak freely in accordance the First Amendment. The letter sent by the Defendant was meant to intimidate and harass the Plaintiffs into not exercising these rights through government coercion and veiled threats of investigation and prosecution into Pastor Paul and Cornerstone Church, Clay Clark, and the ReAwaken America Tour.

57. Ms. James' actions constitute a blatant abuse of the authority granted to her by the State of New York. The Attorney General is not tasked with eliminating her political opponents from the State by sending and publishing defamatory statements and threats to those who wish to host them.

58. By attempting to shut down the free speech of the Plaintiffs and their right to associate with and speak freely regarding their political and/or religious viewpoints, Ms. James acted under color of state law to coerce and threaten the Plaintiffs into not exercising these rights and made references and clandestine threats to investigations and prosecutions if they did so.

**SECOND CAUSE OF ACTION**
(Defamation/Libel Per Se)

59. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 58 above as though fully set forth herein.

60. Defamation, whether in the form of libel or slander, generally is defined as the making of a false statement which "tends to expose a person to hatred, contempt or aversion, or to induce

13

an evil or unsavory opinion of him [or her] in the minds of a substantial number of the community.[2]

61. To establish a claim for defamation, Defendant must have published a false statement, without privilege or authorization, to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se.[3]

62. Defamation per se includes statements "that tend to injure another in his or her trade, business or profession" and requires no allegation of special damages.

63. The Defendant states in her letter:

"As New York's top law enforcement officer, I have significant concerns that the ReAwaken America Tour's upcoming event at the Cornerstone Church in Batavia, New York on August 12 and 13 could spur extremist or racially motivated violence. These concerns center around the events proposed dates, which coincide with the five-year anniversary of the deadly Unite the Right rally in Charlottesville, Virginia and past extremist statements made by yourselves and other featured speakers on the tour."

"I am especially concerned about featured speakers' regular allusions to white nationalist ideals connected to the "Great Replacement Theory," a conspiracy theory that warns of white genocide and efforts to replace native born Americans with immigrants. The theory is frequently linked to violent actions, including the racially motivated mass shooting that killed 10 people at a Tops Friendly Markets store in Buffalo.1 Especially in light of this racist mass shooting, and other recent episodes of racially motivated violence in New York and throughout the country, the Office of the Attorney General is concerned that such rhetoric could contribute to violent or unlawful conduct at the Reawaken America Tour's upcoming event."

---

[2] *Khandalavala v. Artsindia.com*, LLC, 2014 N.Y. Slip Op. 30939 (N.Y. Sup. Ct. 2014)
[3] *Dillon* v *City of New York,* 261 AD2d 34, 38 (1st Dept 1999); *see O'Neill* v *New York Univ.,* 97 AD3d 199, 212 (1st Dept 2012); *Salvatore* v *Kumar,* 45 AD3d 560, 563 (2d Dept 2007).

14

64. Defendant James erroneously suggesting that The Tour and The Church are hosting speakers with "white nationalist ideals….frequently linked to racially motivated violence", is a defamatory statement that damaged the reputations of both Plaintiffs.

65. DEFENDANT James' further suggestion that the speakers being hosted by the Plaintiffs and their rhetoric were responsible for a mass shooting that occurred less than an hour from the Church community is pure libel. DEFENDANT James callously manipulated the Buffalo mass shooting for the sole purpose of invoking communal and social outrage, and having that outrage directed at The ReAwaken America Tour, Cornerstone Church, and the Plaintiffs themselves.

66. DEFENDANT James continued her false inferences and associations between the Plaintiffs and potential violence when she stated that:

"The Office of the Attorney General writes to remind you that New York law prohibits racially motivated violence, harassment, or interference with another person in the exercise of their civil rights."

67. An entity on the very brink of unknowingly breaking a law may need a reminder of the said law's existence in the form of a personal letter from the Attorney General. In this case however, DEFENDANT Attorney James asserted New York law not as a courteous reminder, but rather to infer a connection between the Plaintiffs, their organizations, and past racially motivated violence throughout the community and country.

68. DEFENDANT James continued to voice baseless concerns about racially motivated violence and level reckless threats based on biased speculation; all in an attempt to frame the Plaintiffs as participants in racism and white nationalism.

15

69. These statements directed at the Plaintiffs were not designed to voice any legitimate concerns about racially motivated violence. This letter, sent from the Office of the Attorney General, was for the sole purpose of intimidating and harassing the Plaintiffs by smearing their reputation, image, and those of The Church and The Event.

70. DEFENDANT James failed to cite any basis for her letter other than a vague reference to "The Great Replacement Theory", and that "such rhetoric could contribute to violent or unlawful conduct at the Reawaken America Tour's upcoming event." She did not say what speakers in particular caused her concern and when, if ever, violence has broken out at a Reawaken America event.

71. Upon Plaintiffs' information and belief, violence has never been associated with The Church or The Tour.

72. DEFENDANT, however, uses her office and her authority to draft and publish an official public letter that characterizes the Plaintiffs and their organizations as being in support of racism and white nationalism.

73. Not only is this defamatory and libelous, but it is also an obvious and glaringly negligent action committed by the top law enforcement official in the State, who has a responsibility to encourage free speech, not stifle it.

### THIRD CAUSE OF ACTION
### New York Civil Rights Law § 40-c

74. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 73 above as though fully set forth herein.

16

75. New York Civil Rights Law § 40-c prohibits discriminating against another person in the exercise of their civil rights - including their right to peacefully protest - based on similar protected characteristics.

76. DEFENDANT James violated NYCRL, in her reckless and irresponsible letter, when she accused Plaintiffs of being a white nationalist group with racist and violent intentions and threatening retribution.

77. These accusations were baseless as DEFENDANT James failed to reference or cite to any statements or acts to support her claims.

78. The actions of Defendant James are the very acts which NYCRL § 40-c prohibits, as DEFENDANT James' letter was solely motivated by the differing political and religious views of the Plaintiffs and the fact that the group is made up of primarily white participants. With that, she attempted to quell their speech, thwart the event, and prevent the assembling of likeminded people whose purpose was solely to inform, encourage and uplift each other.

**FOURTH CAUSE OF ACTION**
(Negligence)

79. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 78 above as though fully set forth herein.

80. The Attorney General of New York has a duty to all citizens of the State. Attorney generals are the top legal officers of their state or territory. They advise and represent their legislature and state agencies and act as the "People's Lawyer" for the citizens.

17

81. The NYSBA NY Rules of Professional Conduct, Rule 8.4; discusses attorney standards and misconduct. It reads:

"A lawyer or law firm shall not: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) engage in illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness as a lawyer; (c) **engage in conduct involving dishonesty, fraud, deceit or misrepresentation**; (d) **engage in conduct that is prejudicial to the administration of justice; (e) state or imply an ability**: (1) to influence improperly or upon irrelevant grounds any tribunal, legislative body or public official; or (2) **to achieve results using means that violate these Rules or other law**; (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; (g) unlawfully discriminate in the practice of law, including in hiring, promoting or otherwise determining conditions of employment on the basis of age, race, creed, color, national origin, sex, disability, marital status, sexual orientation, gender identity, or gender expression or engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer."

82. Rule 8.4 further states that:

"Lawyers holding public office **assume legal responsibilities going beyond those of other citizens**. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers."

83. The DEFENDANT, as the top law enforcement office and officer in the state, has a duty to the citizens of New York to follow the professional standards of the NYSBA. By way of breaching that duty, the Defendant has caused damage to Plaintiff Pastor Doyle's reputation and that of his church.

84. DEFENDANT James did not conduct any research or investigation into her alleged concerns surrounding The Tour or The Church. Rather, she saw an event organized by her political rivals and abused her Office's delegated authority by using it to attack, threaten, and intimidate law-abiding citizens. Her actions include dishonesty, deceit, and misrepresentation, as well as "stating and implying an ability" to investigate and prosecute the Plaintiffs.

18

85. DEFENDANT James' letter and the threats therein were clearly prejudicial, concerned solely with the political affiliation of the Plaintiffs, and done in bad faith.

86. To reiterate Rule 8.4, "A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers", as, "lawyers holding public office assume legal responsibilities going beyond those of other citizens."

**IV. PRAYER FOR RELIEF**

WHEREBY, Plaintiffs Paul Doyle, Cornerstone Church, and Clay Clark, request the following from this Court:

1. That the Defendant be ordered to fully and publicly retract her letter to the Plaintiffs.

2. That the Defendant be ordered to pay punitive and nominal damages to the Plaintiffs according the full amount authorized by law, and;

3. Any other relief this Court deems necessary and proper.

Dated: January 20, 2023

Respectfully Submitted

/s/ *Tricia Lindsay*

Tricia S. Lindsay, Esq.
*Attorney for Plaintiffs*

19

# EXHIBIT A



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
THE CAPITOL
ALBANY, NY 12224

LETITIA JAMES
ATTORNEY GENERAL

(518) 776-2000

August 3, 2022

General Michael Flynn and Clay Clark
c/o Cornerstone Church
8020 Bank Street Rd
Batavia, NY 14020

Re: ReAwaken America Tour

General Michael Flynn and Clay Clark:

As New York's top law enforcement officer, I have significant concerns that the ReAwaken America Tour's upcoming event at the Cornerstone Church in Batavia, New York on August 12 and 13 could spur extremist or racially motivated violence. These concerns center around the event's proposed dates, which coincide with the five-year anniversary of the deadly Unite the Right rally in Charlottesville, Virginia, and past extremist statements made by yourselves and the other featured speakers on the tour.

I am especially concerned about featured speakers' regular allusions to white nationalist ideals connected to the "Great Replacement Theory," a conspiracy theory that warns of white genocide and efforts to replace native born Americans with immigrants. The theory is frequently linked to violent actions, including the racially motivated mass shooting that killed 10 people at a Tops Friendly Markets store in Buffalo.[1] Especially in light of this racist mass shooting, and other recent episodes of racially motivated violence in New York and throughout the country, the Office of the Attorney General is concerned that such rhetoric could contribute to violent or unlawful conduct at the ReAwaken America Tour's upcoming event.

The Office of the Attorney General writes to remind you that New York law prohibits racially motivated violence, harassment, or interference with another person in the exercise of their civil rights. New York Civil Rights Law § 79-n empowers the Office of the Attorney General to investigate acts of violence, intimidation, threats, or harassment directed at people based on a belief or perception regarding an individual's race, color, national origin, ancestry, gender, religion, religious practice, age, disability, or sexual orientation. In addition to actual damages, any person who violates this statute can be held liable for $5,000 in penalties for each violation.

General Flynn & Clay Clark
August 3, 2022
Page 2 of 2

Additionally, New York Civil Rights Law § 40-c prohibits discriminating against another person in the exercise of their civil rights — including their right to peacefully protest — based on similar protected characteristics. Finally, New York Executive Law § 63(12) empowers the Office of the Attorney General to take action against any business engaged in significant fraud or illegality — including the violation of New York's civil rights laws.

The Office of the Attorney General has a duty to protect New Yorkers from extremist and racially motivated violence. We stand ready to investigate any violation of the laws above and, if necessary, to enforce them to the fullest extent available. You are therefore instructed to take all necessary steps to ensure that the event complies fully with the requirements of New York's civil rights laws and all other applicable state and federal statutes.

Your cooperation in ensuring a peaceful and law-abiding event will be greatly appreciated.

Sincerely,

*Letitia James*

LETITIA JAMES
New York State Attorney General

CC: Cornerstone Church